**N.S.N. INTERNATIONAL INDUSTRY,**
Plaintiff,

v.

**E.I. DUPONT DE NEMOURS
& CO., INC., Defendant.**

**No. 89 Civ. 1692 (KTD) (KAR).**

United States District Court,
S.D. New York.

Nov. 4, 1991.

Cir.1986). *See also, Sieck, supra,* 869 F.2d at 134.

Matthew C. Gruskin, of Yerushalmi, Shiboleth, Yisraeli & Roberts, New York City, for N.S.N.

John Paul Reiner of Townley & Updike, New York City, for DuPont.

## OPINION AND ORDER

KATHLEEN A. ROBERTS, United States Magistrate Judge.

### BACKGROUND

This case has been referred to me to hear and determine discovery motions. Presently before the court is a motion for a protective order filed by the United States of America barring the disclosure of certain documents sought by plaintiff based upon an assertion of the state secrets privilege. For the reasons set forth below I grant the protective order as requested.

N.S.N. International Industries, N.V. ("NSN") is a corporation organized and existing under the law of the Netherland Antilles. On March 13, 1989, NSN filed a complaint against E.I. Dupont de Nemours & Co., Inc. ("DuPont"), a Delaware corporation. The suit alleges that on January 16, 1987, NSN entered into an agreement with DuPont under which NSN agreed to provide certain technology concerning the development of armor systems. NSN further alleges that the purpose of the agreement was to combine NSN technology with DuPont's marketing and financial resources to secure government contracts for the development of military armored personnel carriers. NSN alleges that after it provided DuPont with information and documents related to the NSN technology, DuPont wrongfully terminated the January 27, 1987 agreement, and continued to use NSN technology to its own benefit. DuPont denied these allegations in its Answer filed June 12, 1989.

On June 28, 1989, NSN served a request for production of documents, which included requests for documents relating to a contract between DuPont and the Department of Defense's Defense Advanced Research Projects Agency ("DARPA") and relating to armor technology generally. DuPont responded that certain documents responsive to this request were "classified" pursuant to a Security Classification Guide, DARPA–CG–78, dated November 18, 1985, and that under Executive Order 12356 on National Security Information, DuPont was required to maintain the confidentiality of such documents. DuPont therefore declined to produce these documents in response to NSN's request.

On November 8, 1989, I directed DuPont to produce the "classified" documents unless a motion for a protective order was submitted by the appropriate agency head. Subsequent to this order, by agreement of the parties, NSN retained an expert with security clearance, who was permitted to examine the documents withheld by DuPont and to determine which documents were relevant to plaintiff's case, and therefore to reduce the number of documents that the Government would be required to review in order to assert a claim of state secrets privilege. The expert, Dr. Harry D. Fair, submitted an affidavit to the Court which annexed three lists of documents, identified as "A", "B" and "C". Plaintiff agreed that documents on the "C" list need not be produced or reviewed by the Government for purposes of asserting the privilege. Accordingly, the Government was only required to assert the privilege with respect to the documents on the "A" and "B" lists. After a conference among the parties on May 21, 1991, I directed the United States to submit its assertion of the state secrets privilege no later than July

21, 1991. I subsequently extended this date to July 25, 1991.

*Assertion of the State Secrets Privilege*

On July 25, 1991 Secretary of Defense Richard B. Cheney on behalf of the United States asserted the state secrets privilege in an open declaration with respect to 66 documents that appear on Mr. Fair's "A" and "B" lists. Secretary Cheney states that revelation of the material in these 66 documents "would expose matters of military concern that could reasonably be expected to cause damage to the national security of the United States." Declaration and Claim of State Secrets Privilege of Richard B. Cheney, Secretary of Defense ("Cheney Decl.") ¶ 17.

In his declaration Secretary Cheney describes DARPA as the central research and development agency of the Department of Defense. DARPA is charged with pursuing what is termed as "high risk/high pay off" defense research that is too advanced to be reflected in current military requirements or that cuts across the responsibilities of various military departments. Most of DARPA's efforts are performed through contracts with private firms. Cheney Decl. ¶ 7.

DuPont was awarded Contract DE-AC04–87AL42544 on February 18, 1987, to perform development and testing for the Armor/Anti–Armor program, which is a joint program among DARPA, the Department of Army, and the United States Marine Corps. The program is administered by DARPA personnel. This Program was established in 1987 at the direction of the Secretary of Defense as a result of the 1985 Defense Science Board Study on Armor/Anti–Armor Competition, which reported that "the U.S. is behind the Soviet Union and falling further behind at an alarming rate" in the area of Armor/Anti–Armor technology. The program's goal is to enhance the armor technology base within the United States and to apply that technology as it develops over the long term. Cheney Decl. ¶¶ 8–11.

The documents requested by NSN have been classified by DuPont and/or the United States Government in connection with the Armor/Anti–Armor program. The information contained in these documents falls into two major categories. First, the documents contain technical information pertaining to the development, design, and performance of advanced armor systems. Such systems include reactive, composite and ceramic armor systems. The existence of such systems has the potential to provide a significant combat advantage to United States tactical forces. As described by Secretary Cheney, release of these data could enable other nations to (1) produce similar armor systems and/or (2) design anti-armor systems to defeat our own armor systems if and when they are actually used in combat. Cheney Decl. ¶ 14.

Second, the documents contain technical information pertaining to the various threats that these armors are designed to defeat. Secretary Cheney asserts that release of these data could enable foreign nations to design anti-armor systems to defeat these armor systems. In addition, release of these data could compromise intelligence operations because information revealing the United States' knowledge of the nature and detail of current and projected future threats could be used to deduce the sources and methods of United States intelligence gathering and analysis. Cheney, Decl. ¶ 15.

### THE STATE SECRETS PRIVILEGE

█ "The state secrets privilege is a common law evidentiary rule that allows the government to withhold information from discovery when disclosure would be inimical to national security." *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir.1991) (citing *In re United States*, 872 F.2d 472, 474 (D.C.Cir. 1989)). The privilege belongs to and must be asserted by the government; it cannot be claimed or waived by a private party. *Zuckerbraun*, 935 F.2d at 546; *see also United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1952). It is not necessary for the government be a party to the case to invoke the privilege. *Zuckerbraun*, 935 F.2d at 546.

■ The state secrets privilege is properly invoked only when certain procedural requirements are satisfied. The government must make "[1] a formal claim of privilege, [2] lodged by the head of the department which has control over the matter after [3] actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 531–32 (footnotes omitted); *Zuckerbraun*, 935 F.2d at 546; *Molerio v. F.B.I.*, 749 F.2d 815, 821 (D.C.Cir.1984); *Halkin v. Helms*, 690 F.2d 977, 991 (D.C.Cir.1982) (*Halkin II*). When properly invoked:

> the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege. However, because of the broad sweep of the privilege, the Supreme Court has made clear that '[i]t is not to be lightly invoked.' Thus, the privilege may not be used to shield any material not strictly necessary to prevent injury to national security; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter.

*Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir.1983) (footnotes omitted), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).

Satisfaction of these procedural requirements does not end the judicial inquiry. Without judicial control over the assertion of the privilege, the danger exists that the state secrets privilege will be asserted more frequently and sweepingly than necessary leaving individual litigants without recourse. *See Ellsberg*, 709 F.2d at 58. However, the standard scope of judicial review is narrow. *Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978) (*Halkin I*). "[A]lthough the privilege is not to be lightly invoked, the court must accord the 'utmost deference' to the executive's determination of the impact of disclosure on military * * * secrecy." *Zuckerbraun*, 935 F.2d at 547; *see Halkin I*, 598 F.2d at 9; *Ellsberg*, 709 F.2d at 58. "The Court need only be satisfied that 'there is a *reasonable danger* that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.' " *Halkin I*, 598 F.2d at 9 (quoting *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533); *see Zuckerbraun*, 935 F.2d at 547.

■ The need for the information demonstrated by a party seeking disclosure is a factor in determining the extent of the court's inquiry into the appropriateness of the claim of privilege. *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533–34; *Halkin II*, 690 F.2d at 990. In *Reynolds*, the court held that [w]here:

> there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. *A fortiori*, where necessity is dubious, a formal claim of privilege made under the circumstances of this case, will have to prevail.

*Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533–34; *see Zuckerbraun*, 935 F.2d at 547.

A strong showing of need may require an *in camera* review of the documents to determine whether documents have properly been classified by the government. *See Halkin II*, 690 F.2d at 990 n. 54; *American Civil Liberties Union v. Brown*, 619 F.2d 1170, 1173 (7th Cir.1980); *National Lawyers Guild v. Attorney General*, 96 F.R.D. 390, 401 (S.D.N.Y.1982). " 'A showing of need' for these purposes consists of a demonstration that the information is relevant to a material aspect of the litigant's case and that the litigant is unable to obtain the crucial data (or adequate substitute) from any other source." *Ellsberg*, 709 F.2d at 59 n. 37. In *Ellsberg*, the court established a sliding scale to determine when a court may, or should, make an *in camera* examination of the documents for which the government asserts the state secrets privilege:

> When a litigant must lose if the claim is upheld and the government's assertions are dubious in view of the nature of the information requested and the circumstances surrounding the case, careful *in camera* examination of the material is

not only appropriate * * * but obligatory.

When the litigant requesting the information had made only a trivial showing of need for it and circumstances of the case point to a significant risk of serious harm if the information is disclosed, the trial judge should evaluate (and uphold) the privilege claim solely on the basis of the government's public representations, without an *in camera* examination of the documents.

*Ellsberg,* 709 F.2d at 59 nn. 37–38.

### DISCUSSION

NSN opposes the assertion of the state secrets privilege on two grounds. First, NSN contends that the government has failed to comply with the requirement that the assertion of the privilege be made "after actual personal consideration" by the department head because Secretary Cheney's declaration does not include a representation that the Secretary has examined each page or even each document for which the privilege has been asserted. Memorandum in Opposition to the Assertion of the State Secrets Privilege by the United States of America ("NSN Opp. Memo") at 3, 6–9. Second, NSN contends that the privilege has been waived by disclosure of the documents at issue to the attorneys representing DuPont in this case. NSN Opp. Memo at 9–14. NSN therefore argues that the court should reject the assertion of the privilege and grant access to the withheld documents to plaintiff's counsel and their approved consultants, subject to an appropriate confidentiality order. NSN Opp. Memo at 14.

### Waiver

■ DuPont is represented in this litigation by Townley & Updike, and specifically by attorneys John Paul Reiner and Mark S. Sullivan. In a declaration submitted in connection with the assertion of the privilege, Sullivan states that in December 1989, Reiner and Sullivan completed a Department of Defense form, Form DD–48 (Aug 87), to apply for security clearances as consultants to DuPont. Declaration of Mark S. Sullivan, dated July 18, 1991 (Cheney Declaration, Attachment 2) ("Sullivan Decl.") ¶ 4. These forms contained information regarding the background of the attorneys and did not set forth the reasons for their need for access to the information involved. *Id.* ¶ 4. The forms were submitted by DuPont to the Defense Industrial Security Clearance Office of the Department of Defense, located in Columbus, Ohio. *Id.* The attorneys were subsequently informed by DuPont that the Defense Industrial Security Clearance Office certified that Reiner and Sullivan had been granted clearance to have access to certain limited classified information on DuPont's premises. *Id.* ¶ 5.

Sullivan subsequently examined the cover pages of the documents for which the government now asserts the privilege, in order to compile the list required by Local Rule 46; he did not review the contents of the documents. *Id.* ¶¶ 6, 7. Reiner has never examined the documents, and no other attorney from Townley & Updike received clearance or has been given access to classified information. *Id.* ¶¶ 7, 8. Both Reiner and Sullivan have discussed the subject matter of this litigation with their clients. *Id.* ¶ 6.

Based upon these facts, the Government contends that no waiver of the privilege has occurred. The Government points out that access to classified information by DuPont's attorneys in this action was granted not by DARPA, but by the Defense Industrial Security Clearance Office in Columbus, Ohio, in accordance with established procedures for granting access to consultants to defense contractors based on the contractor's request for access by its consultants, and has, in any event, not resulted in examination of the documents at issue by Sullivan or Reiner. Statement of Interest of the United States of America ("Gov't Memo") at 13. The Government further argues that even if Sullivan and Reiner had seen the documents,

such access would be wholly proper since it would involve the granting of access to agents of the very corporation that created the privileged material. Because DuPont created the material to begin

with, it would be absurd to argue that "disclosure" to DuPont of these materials could have waived the privilege. * * * Thus, if the attorneys ever did examine the documents, it would simply be a case of access being granted to agents of a corporation already entitled to access to the materials.

Gov't Memo at 15.

NSN asserts that voluntary disclosure of classified information by the Government is "usually" made on "a need to know basis," which NSN defines as "disclosure which is intended to serve a legitimate purpose of the Government." NSN Opp. Memo at 13. NSN argues that there was no "compelling need" to disclose the assertedly privileged documents or their contents to DuPont's outside counsel, because Townley & Updike could simply instruct those with security clearance at DuPont to collect the classified documents responsive to plaintiff's requests and make them available to the Government to determine if it wished to assert the state secrets privilege. *Id.* at 13. NSN contends that the documents should therefore be disclosed to plaintiff's counsel because "[i]t is inequitable for the Government to gratuitously grant counsel to one party of a litigation access to crucial documents while denying access to counsel to the opposing party." *Id.* at 14.

I agree, for substantially the reasons asserted by the government, that under the circumstances of this case, the government has not waived the state secrets privilege.[1] I also agree that plaintiff has failed to demonstrate that granting access to DuPont's attorneys has given defendant any greater advantage that DuPont possessed before the lawsuit began. *See* Reply Memorandum of Law in Support of the Assertion of the State Secrets Privilege by the United States of America. ("Gov't Reply Memo") at 9–10. I therefore find that the granting of access to DuPont's attorneys did not waive the state secrets privilege, or unfairly disadvantage NSN in this litigation.

*Personal Consideration by the Secretary*

■ NSN contends that the state secrets privilege may be properly asserted "only if each document is specifically examined by the department head." NSN Opp. Memo at 7. The only authority cited for this contention is *National Lawyers Guild v. Attorney General,* in which Magistrate Sinclair set forth the following general direction regarding the assertion of privilege in that case:

In view of the foregoing, formal claims of state secrets privilege * * * are to be made for every asserted privileged item. The procedural requirements discussed herein must be satisfied for each item. This includes the requirement that the Attorney General personally review each item for which he asserts the privilege.

*National Lawyers Guild,* 96 F.R.D. at 403. However, as the government points out (Gov't Reply at 4), Magistrate Sinclair's opinion in *National Lawyers Guild* is directed to the government's proposal in that case that the agency be permitted to use a random sampling technique to avoid making an assertion of the state secrets privilege with respect to all of the documents at issue. In rejecting this proposal, Magistrate Sinclair concluded that "[i]t is this stringent prerequisite of personal consideration which constrains the court to forego use of a sampling technique. In light of the case law it is difficult to justify use of a sampling technique whose very purpose is to dispense with the Attorney General's personal consideration of every item for which a claim of privilege is lodged." 96 F.R.D. at 397. It is therefore clear that the court required only "personal consideration" of each document, not personal examination of every page of every document. I have not found, nor has plaintiff cited, any case imposing a requirement that an agency head personally review each document at issue, much less each page.

■ In this case, Secretary Cheney represents that he has given personal consideration to each of the documents at issue. Moreover, since Secretary Cheney's declaration specifically refers to the fact that

---

**1.** I do not agree that the state secrets privileged can never be waived. *See* Gov't Memo at 14.

unclassified portions of the documents have been released to the plaintiff, it is apparent that the Secretary has considered whether additional portions of the documents could be segregated and determined that the remaining classified portions should in fact be withheld. *See* NSN Opp. Memo at 7; *Ellsberg,* 709 F.2d at 55.

### NSN's Need for the Documents

■ On August 30, 1991, NSN filed a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(d), asserting that there are no material issues of fact and that NSN is entitled to judgment as a matter of law on several of its claims for breach of contract. NSN asserts that in moving for summary judgment, it was

> sometime[s] forced to prove its case in an indirect matter. Because of the pending assertion and the limited discovery made available to plaintiff, NSN has been denied the right to simply present, *in camera* to this Court, the technology used by Du Pont in these Projects, place it side by side with the NSN technology and have the Court see for itself that the technology used by Du Pont is based upon the NSN technology.

NSN Opp. Memo at 5. NSN also asserts that it was unable to move for summary judgment on certain other causes of action because it "lacked access to sufficient evidence at this time to succeed on a summary judgment motion with respect to these claims," and because the evidence it needs is included within the documents covered by the assertion of the privilege. NSN Opp. Memo at 4–5. NSN claims that "if the Government's assertion of the privilege is denied, NSN will be able to appreciably strengthen its application for summary judgment, and in the event summary judgment is denied, use this additional evidence to prove its case at trial." NSN Opp. Memo at 6.

As noted above, a strong showing of need may require an *in camera* review of the assertedly privileged documents to determine whether they have properly been classified by the government. *See supra,* page 278. However, if the documents have properly been classified, "even the most compelling necessity cannot overcome the claims of privilege * * *." *Reynolds,* 345 U.S. at 11, 73 S.Ct. at 533. Notably, NSN has not requested that the court review the documents *in camera;* rather, based upon its arguments of improper invocation of the privilege and waiver, NSN seeks disclosure of the documents to plaintiff's counsel. NSN therefore implicitly concedes that *in camera* review would confirm that the documents in fact contain military secrets and are properly classified. *In camera* review would, in any event, be inappropriate in this case. Having reviewed NSN's motion for summary judgment, I find that NSN is in possession of substantial evidence from other sources supporting its claims. Under these circumstances, the court's scrutiny of the government's assertion of the state secrets privilege need not be as searching as where a party is wholly unable to prove its case without the assertedly classified information. *See Reynolds,* 345 U.S. at 11, 73 S.Ct. at 533–34; *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 399–401 (D.C.Cir.1984); *Ellsberg,* 709 F.2d at 58–59.

### Propriety of the Government's Assertion of the Privilege

■ Based upon the representations in Secretary Cheney's declaration as set forth above, *see supra* page 277, I find that the government has met all the procedural requirements for assertion of the privilege, and that the government has met its burden of demonstrating "that there is a reasonable danger that disclosure of the classified documents will expose military matters which, in the interest of national security, should not be divulged." *Reynolds,* 345 U.S. at 10, 73 S.Ct. at 533. I therefore grant the government's motion for a protective order barring release of the 66 documents for which the government has asserted the state secrets privilege.

SO ORDERED.