Louis Scott JONES, Plaintiff,

v.

John ASHCROFT, Attorney General, United States Department of Justice, Defendant.

No. CIV.A. 03–1723(ESH).

United States District Court, District of Columbia.

March 3, 2004.

Jane M. Lyons, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Louis Scott Jones applied for a position as Special Agent with the Federal Bureau of Investigation ("FBI") and received a conditional employment offer after successfully completing preliminary phases of the application process. His conditional offer was rescinded after the FBI conducted a background investigation and found him to be "unsuitable." Plaintiff alleges discriminatory treatment and discriminatory impact based on race in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.* Defendant has moved to dismiss based on lack of jurisdiction, failure to state a claim upon which relief may be granted, and failure to exhaust administrative remedies. For the reasons set forth below, defendant's motion will be denied in part and granted in part.

## BACKGROUND

In 1995 plaintiff applied for a Special Agent position with the FBI. After a first unsuccessful application, plaintiff reapplied in January 1999. (Pl.'s Ex. A at 3 [Dep't of Justice ("DOJ") Final Decision].) Having successfully completed the preliminary phases of the application process, including a series of tests and a panel interview, plaintiff received a conditional offer of employment on October 18, 1999. (*Id.*) The offer was contingent upon his successful completion of a physical examination, polygraph examination, background investigation, and an overall determination by the FBI, based on a review of his entire file,

Richard T. Tomar, Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A., Rockville, MD, Stephen G. Seliger, Seliger, Elken & Dolan, Chicago, IL, for Plaintiff.

that plaintiff would be a "suitable" agent. (*Id.*)

Plaintiff successfully completed the physical examination and polygraph examination, but on July 17, 2000, his offer was rescinded because the FBI determined he was an unsuitable candidate after his background investigation revealed an alleged lack of forthrightness about a prior encounter with police. (Pl.'s Ex. A at 4 [DOJ Final Decision].)[1] Patrick Maloy, the Chief of the Bureau Applicant Employment Unit ("BAEU"), notified plaintiff that his conditional offer was being rescinded based on "information gathered during complainant's background investigation 'from a variety of sources,' including complainant's job application, comments during the investigation, and results of various record checks." (*Id.* at 4 (quoting Letter from Patrick Maloy to plaintiff (July 17, 2000)).) Plaintiff appealed that decision, and on September 11, 2000, Deputy Assistant Director and Personnel Officer Michael Varnum upheld it, explaining that plaintiff did not

"meet the suitability standards" of a Special Agent because he had failed to disclose on his application or during the Personnel Security Interview that he had been arrested in 1982 for failing to submit to a police officer's request . . . [and] "[a]lthough the charge was dismissed, [plaintiff's] lack of forthrightness regarding this matter preclude[d][his] case from being further processed."

(*Id.* (quoting Letter from Michael Varnum to plaintiff (Sept. 11, 2000)).)[2] Thereafter, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 5, 2000. (Def.'s Ex. 3 [EEOC Compl.].) After an investigation, the DOJ issued a Final Decision on February 24, 2003. (Pl.'s Ex. A [DOJ's Final Decision].) Plaintiff appealed on March 28, 2003 (Def.'s Ex. 1 [EEO Appeal]),[3] but withdrew his appeal in August 2003 (prior to a final EEOC decision) to pursue this lawsuit. (Def.'s Ex. 2 [Letter from Carlton M. Hadden, Director, EEOC Office of Fed. Operations, to Stephen G. Seliger, plaintiff's counsel (Aug. 21, 2003) ].)[4]

1. On September 4, 1982, plaintiff had failed to submit to a request for his driver's license during a traffic stop. (*Id.*) Plaintiff did not disclose this incident in his personnel security interview when he told the interviewer that, except for a separate incident in 1984, he had "not been arrested, charged with, or convicted of any other criminal offense." (*Id.* at 3.) However, plaintiff did mention the incident during a pre-polygraph test interview on December 15, 1999. (*Id.* at 6.)

2. The complete contents of the Maloy and Varnum letters are not known. Excerpts only are quoted in the DOJ's Final Decision, which was provided as Exhibit A to plaintiff's Opposition.

3. Although plaintiff's appeal form was signed and dated on March 27, 2003, the attached facsimile transmittal page is dated the next day, March 28, 2003.

4. It is unclear whether the agency administratively closed plaintiff's appeal. A November 3, 2003 letter from the EEO to plaintiff's counsel indicates that plaintiff's administrative complaint was forwarded to the DOJ's EEO staff "with a recommendation that it be dismissed" since plaintiff filed this lawsuit. (Pl.'s Opp. Ex. C [Letter from Veronica Venture, EEO Officer, to Richard T. Tomar, plaintiff's counsel (Nov. 3, 2003) ].) Plaintiff indicates that he is "awaiting a final decision" as a result of this letter. (Pl.'s Opp. at 10.) However, plaintiff affirmatively requested withdrawal, and it appears that the EEOC has closed his file. (Def.'s Mot. Ex. 2 [Letter from Carlton M. Hadden, Director, EEOC Office of Federal Operations, to Stephen G. Seliger, plaintiff's attorney (Aug. 21, 2003) ] (the record in plaintiff's appeal "is being closed because [plaintiff's attorney] requested withdrawal of [plaintiff's] appeal" based on filing of this lawsuit).)

Plaintiff filed suit in this Court on August 13, 2003, alleging that the FBI's refusal to hire him violated Title VII because its employment practices had a disparate impact on minorities (Count I) and because the FBI's refusal to hire him because of his race constituted disparate treatment (Count II). Defendant has moved to dismiss these claims.

## LEGAL ANALYSIS

### I. Legal Standard

Defendant moves to dismiss for lack of jurisdiction and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) respectively. Under Fed.R.Civ.P. 12(b)(6), dismissal is appropriate only where a defendant has "show[n] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations in plaintiff's complaint are presumed true for purposes of a 12(b)(6) motion, and all reasonable factual inferences should be construed in plaintiffs' favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995).

██ When faced with a challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the complaint may be subject to closer scrutiny than is the case with a 12(b)(6) motion. *Uberoi v. E.E.O.C.*, 180 F.Supp.2d 42, 44 (D.D.C. 2001), *aff'd*, 36 Fed.Appx. 457 (D.C.Cir. 2002). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* Accordingly, where necessary to determine whether it has jurisdiction, a court may consider materials beyond the pleadings. *Sweeney v. Am. Registry of Pathology*, 287 F.Supp.2d 1, 3 (D.D.C.2003); *see also Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.Supp.2d 18, 22 (D.D.C.2000), *aff'd*, No. 00–7176, 2001 WL 135857 (D.C.Cir. Jan.18, 2001). "[T]he court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C.Cir.1992). The burden of proving subject matter jurisdiction rests with plaintiff. *Vanover v. Hantman*, 77 F.Supp.2d 91, 98 (D.D.C.1999).

### II. Subject Matter Jurisdiction

██ Defendant claims that Title VII expressly bars the courts from considering the particular claims presented here. (Def.'s Mot. at 5.) He contends that, although Title VII expressly waives the government's sovereign immunity from suit for certain discrimination claims, employment decisions made in the interest of national security are exempt from the waiver under 42 U.S.C. § 2000e–2(g), which provides:

[I]t shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position . . . if—

(1) the occupancy of such position . . . *is subject to any requirement imposed in the interest of the national security* of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement. (Emphasis added.)

In contrast, plaintiff argues that the BAEU's suitability determination was not in the interest of national security, and in fact, it did not involve national security in any way. (Pl.'s Opp. at 6.) As explained herein, based on the record before it, the Court cannot conclude that § 2000e–2(g)'s exemption encompasses the background investigation at issue here.

As a threshold matter, plaintiff relies heavily on a recent decision of the Honorable James Robertson in *Delgado v. Ashcroft*, No. 99–2311 (D.D.C. May 29, 2003), to argue that collateral estoppel bars defendant's jurisdictional challenge. In that case, which is factually similar to this one, the court, after conducting a trial on plaintiffs' disparate impact claim, rejected the FBI's jurisdictional argument determining that plaintiffs were rejected (after their background investigations) for suitability reasons and not as a result of a failure to obtain security clearances. *Delgado*, No. 99–2311, at 14–15. The court determined that "[i]f the suitability determination actually did perform all of the functions of a security clearance, the subsequent security clearance process would be completely meaningless." *Id.* at 15.

Plaintiff's reliance on collateral estoppel is, however, misplaced. Under that doctrine, "a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." *NextWave Pers. Communications, Inc. v. F.C.C.*, 254 F.3d 130, 147 (D.C.Cir.2001) (internal citation and quotation marks omitted), *aff'd*, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003). A decision on such an issue is "conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568,

78 L.Ed.2d 379 (1984). However, a plaintiff generally may not apply offensive collateral estoppel against the government. *Id.* at 160–63, 104 S.Ct. 568. Further, for collateral estoppel to apply, the court must have issued a final decision on the merits. *NextWave*, 254 F.3d at 147. The *Delgado* court has not done so, for it issued findings of fact and conclusions of law on plaintiff's disparate impact claims, but it has yet to determine plaintiffs' disparate treatment claims. *See* Fed.R.Civ.P. 54(b) (when a decision adjudicates fewer than all claims in a case and there has been no entry of final judgment as to that decision, it is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). Accordingly, collateral estoppel does not bar defendant's jurisdictional challenge here.

As a result, this Court must turn to the issue of whether, as a matter of law, 42 U.S.C. § 2000e–2(g) deprives it of jurisdiction to hear plaintiff's Title VII claim. According to defendant, the FBI's decision not to hire plaintiff was made subject to a requirement imposed in the interest of national security. In particular, he argues that two Executive Orders require background investigations in the interest of national security, and that the FBI's decision not to hire plaintiff was made pursuant to those Orders. Specifically, defendant contends that Executive Orders 10,450 and 9,835 placed the FBI's background investigation under the section 2000e–2(g) exemption and thus beyond the Court's jurisdiction. (Def.'s Mot. at 3; Def.'s Reply at 5.) Executive Order 10,450 provides in relevant part:

> [t]he head of each department and agency of the Government shall be responsible for establishing and maintaining within his department or agency an effective program to insure that the em-

ployment and retention in employment of any civilian officer or employee within the department or agency is clearly consistent with the interests of the national security . . .

The appointment of each civilian officer or employee in any department or agency of the Government shall be made subject to investigation.

Exec. Order No. 10,450, 18 Fed.Reg. 2,489 (Apr. 27, 1953). Further, Executive Order 9,835 provides in relevant part:

[a] full field investigation shall also be conducted . . . of applicants for particular positions, as may be designated by the head of the employing department or agency, such designations to be based on the determination by any such head of the best interests of national security.

Exec. Order No. 9,835, 12 Fed.Reg. 1,935 (Mar. 21, 1947).

Defendant also relies on two D.C. Circuit opinions—*Molerio v. Fed. Bureau of Investigation*, 749 F.2d 815 (D.C.Cir.1984), and *Ryan v. Reno*, 168 F.3d 520 (D.C.Cir. 1999). In those decisions, unsuccessful job applicants were denied security clearances.[5] In *Molerio*, the plaintiff, an FBI Special Agent applicant, brought a Title VII action alleging discrimination based on his national origin. 749 F.2d at 823. In processing his security clearance, the FBI considered his relatives' connections to Cuba, which they discovered during a background investigation. *Id.* at 819, 823. The D.C. Circuit found that 42 U.S.C. § 2000e–2(g) "specifically acknowledges the general validity of national security clearance requirements," and the fact that such requirements imposed disabilities was not evidence of discrimination. *Id.*

Similarly, in *Ryan*, applicants were denied positions with Immigration and Naturalization Services ("INS") after receiving conditional employment offers because their extended residence outside the United States prevented the DOJ Security Office from conducting adequate background investigations. 168 F.3d at 522. The Court held that "an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII." *Id.* at 524.

In those cases, unacceptable background investigations factored into employment decisions made in the interest of national security. Here, the hiring decision was not due to a security clearance denial, which is unquestionably exempt from judicial review. *See, e.g., Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir.1996); *Perez v. FBI*, 71 F.3d 513, 514–15 (5th Cir.1995). In fact, defendant concedes that "the background investigation that plaintiff seeks to challenge here is one small step removed from the security clearance determination." (Def.'s Mot. at 8.) However, defendant argues that "Title VII does not require that the *challenged practice* be the grant or denial of a security clearance." (*Id.* at 6 (emphasis in original).)

A closer examination of *Ryan* sheds light on whether a decision one step removed from a security clearance denial falls under the jurisdictional exemption of section 2000e–2(g). There, the DOJ Security Office denied an INS request to waive the applicants' pre-appointment field investigation. 168 F.3d at 522. It determined that since each applicant had "lived in Ireland for an extended period of time, an adequate background investigation [could

---

5. As discussed more fully below, in *Ryan*, the challenged employment decision was actually one step removed from a security clearance denial—applicants were denied a waiver of the requirement for preappointment back-

ground investigations and thus could not obtain security clearances. 168 F.3d at 522, 524. However, the Court viewed the denials of a waiver as "tantamount to [security] clearance denials." *Id.* at 524.

not] be conducted to determine [the applicants'] eligibility to occupy a sensitive position," and the applicants' conditional employment offers were withdrawn. *Id.* In arguing for jurisdiction, the applicants attempted to characterize the waiver denial as a procedural decision about when to waive pre-hire investigation requirements, not a substantive security determination. *Id.* at 524. The D.C. Circuit rejected this argument, holding that "the waiver denials were tantamount to clearance denials and were based on the same sort of 'predictive judgment' that . . . 'must be made by those with the necessary expertise in protecting classified information' without interference from the courts." *Id.* (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 529, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) ("the protection of classified information must be committed to the broad discretion of the agency responsible . . . . Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.")).

■ Here, as in *Ryan*, the employment decision was at least one step removed from a security clearance decision. However, unlike *Ryan*, there is nothing in the record before this Court to indicate that the FBI's suitability determination was made with any "predictive judgment" about whether hiring plaintiff would implicate national security concerns. On the contrary, in its final decision on plaintiff's challenge to the FBI's employment decision, DOJ noted that the FBI based its determination on plaintiff's "perceived lack of forthrightness." [6] (Pl.'s Ex. A at 9 [DOJ Final Decision].) There is thus no evidence before this Court to indicate that the government, at any time prior to the commencement of this lawsuit, considered national security as a basis for its decision not to hire the plaintiff.

■ In reaching this conclusion, the Court is mindful that the Executive Branch is charged with a unique responsibility for national security. *See, e.g., Haig v. Agee*, 453 U.S. 280, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981); *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 296–97 (D.C.Cir.1993). However, the suitability determination here in no way implicates the "broader interest of the Executive Branch with respect to protecting the interests of national security" (Def.'s Mot. at 9), because it is distinct from national security determinations. While this Court does not hold that section 2000e–2(g)'s exemption is necessarily limited only to security clearance determinations, it must be limited to employment decisions made *in the interest of national security*, and that does not appear to be the case here.

.. Moreover, while obviously not binding on this Court, the findings made by the *Delgado* court, after a trial on the disparate impact claims, provide further support for this Court's conclusion that plaintiff's background investigation is not protected

---

**6.** Plaintiff. also argues that EEOC policy allows examination of "the process that an agency uses" to address national security investigations "for the possibility that the agency is acting in a discriminatory manner." (Pl.'s Opp. at 6–7 (citing EEOC Policy Guidance on the Use of the National Security Exception, 1989 WL 1000615 (May 1, 1989) (" 'national security requirements must be applied equally without regard to race, sex, color, religion or national origin' ")).) While EEOC policy may be informative, it is not controlling authority, *see, e.g., Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), and if it were contrary to the holding in *Ryan*, which the Court need not decide here, it could not be followed.

by section 2000e–2(g)'s exemption. In deciding that there was subject matter jurisdiction, the court in *Delgado* noted: "[n]one of the plaintiffs was discontinued as a result of a failure to obtain security clearance. This was made abundantly clear by Maloy, who testified that neither he nor anyone else in the FBI's applicant employment unit had anything to do with making national security decisions concerning applicants." *Delgado*, No. 99–2311, at 14–15.

Accordingly, the Court is unwilling to dismiss based on a lack of subject matter jurisdiction, for it rejects the government's overly-expansive reading of section 2000e–2(g)'s exemption.

## III. Exhaustion of Administrative Remedies

Defendant also moves to dismiss arguing that plaintiff has failed to exhaust his administrative remedies in two ways: (1) his administrative charge did not include a disparate impact claim; and (2) he failed to file suit according to the statutorily prescribed time limits. (Def.'s Mot. at 10–15.)

 With respect to the first issue, the Court will not dismiss plaintiff's disparate impact claim for failure to exhaust administrative remedies by neglecting to include it in his administrative charge. A complainant must exhaust his or her administrative remedies and receive a notice of right to sue from the EEOC before a civil suit may be initiated. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995). "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (internal citation and quotation marks omitted). At a minimum, the Title VII claim must arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* "[T]he administrative charge requirement should not be construed to place a heavy technical burden on individuals untrained in negotiating procedural labyrinths." *Id.* (internal citation and quotation marks omitted). However, a level of specificity in the administrative charge serves the "important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Id.* (internal citation and quotation marks omitted).

Nonetheless, as defendant concedes, "[t]he Court is faced exclusively with persuasive authorities resolving the issue differently based on the facts." (Def.'s Reply at 9.) For example, in *Byrnie v. Town of Cromwell Public Schools*, plaintiff's disparate impact claim reasonably fell within the scope of the original charge (which referred to gender and age discrimination categorically) because "[p]laintiff, who filed his charge *pro se*, was not required to specify under what theory of discrimination he was proceeding." 73 F.Supp.2d 204, 220 (D.Conn.1999) (finding administrative procedures sufficiently exhausted but granting summary judgment for defendant on the disparate impact claim after considering the evidence), *aff'd in part and rev'd in part on other grounds*, 243 F.3d 93 (2d Cir.2001); *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir.1998) (the plaintiff's disparate impact claim "reasonably related to her failure to promote claim as we would expect that the EEOC, in investigating the complaint, would have assessed [the employer's] promotion policies and their effect on minority employees"). *Contra Lawton v. Sunoco, Inc.*, No. Civ. A 01–2784, 2002 WL 1585582, at *4–5 (E.D.Pa. July 17, 2002), *aff'd*, 65 Fed.Appx. 874 (3d Cir.2003) (plaintiff failed to state a disparate impact claim where his charge alleged only dispa-

rate treatment because it described no policy or practice which caused disparate impact on African–Americans).

Here, the face of plaintiff's charge was sufficient to give notice that he complained of racial discrimination, and indeed, the FBI's investigation focused exclusively on racial discrimination.[7] Plaintiff filed his initial complaint without the benefit of counsel. As such, requiring him to plead with specificity the legal theory under which he was proceeding would place too heavy a burden on an individual untrained in the complexities of Title VII administrative process. *Park,* 71 F.3d at 907; *Byrnie,* 73 F.Supp.2d at 220.

 With respect to the second exhaustion issue, defendant argues that plaintiff's failure to wait 180 days after filing his administrative appeal constitutes a failure to exhaust administrative remedies. After filing his complaint, plaintiff appealed the DOJ's final decision to the EEOC. The District of Columbia Circuit Court has recognized that the EEOC has been given "broad authority to enforce [Title VII's] antidiscrimination mandate within the federal government, including responsibility for issuing regulations to control federal agencies' processing of discrimination complaints." *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) (citing 42 U.S.C. § 2000e–16). Pursuant to this authority, the EEOC has established detailed procedures for resolving administrative complaints, including a series of time limits for filing formal charges. *Id.* (citing 29 C.F.R. § 1614). Accordingly, "[c]omplainants must timely exhaust these administrative remedies before bringing their claims to court." *Id.* (citing *Brown v. Gen. Serv. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Specifically, Title VII and EEOC regulations allow a civil suit to be filed after 180 days from the date of filing an appeal if the EEOC has not issued a final decision.[8] It is undisputed that plaintiff filed this lawsuit before 180 days had passed—he filed his appeal on March 28, 2003, and this lawsuit 138 days later on August 13, 2003. Ordinarily, individuals who fail to comply with these administrative deadlines will be denied a judicial audience. *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985); *see also Smith v. Henderson,* 137 F.Supp.2d 313, 317 (S.D.N.Y.2001) (failure to comply with the time provisions of 42 U.S.C. § 2000e–16(c) and 29 C.F.R. § 1614.407 warrants dismissal).

However, the parties dispute the effect of plaintiff's failure to comply with the relevant time schedule. While plaintiff asserts that his case should not be dismissed because "180 days have *now* clearly passed" (Pl.'s Opp. at 10) (emphasis in

7. In his motion, defendant appears to argue that plaintiff's charge failed to allege racial discrimination. (Def.'s Mot. at 13–14.) However, the face of plaintiff's administrative charge form *did* indicate that his claim was based in part on race, and as evidenced by the DOJ's Final Decision's focus on race as the basis of plaintiff's claim, it is clear that the agency was on notice that plaintiff's claim was based, at least in part, on race.

8. Specifically, Title VII provides:
 after one hundred and eighty days from the filing … with the Equal Employment Opportunity Commission on appeal from a decision or order of such … agency … until such time as final action may be taken by [an] … agency[,] … an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action ….
 42 U.S.C. § 2000e–16(c).
 Likewise, the EEOC regulations provide that a complainant is authorized to file a civil action "[a]fter 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission." 29 C.F.R. § 1614.407(d).

original), defendant argues that, even so, "plaintiff is not currently eligible to proceed because he affirmatively withdrew his appeal to the [EEOC] in August, 2003 before the Commission could rule" and before the 180–day period had run. (Def.'s Mot. at 11.) In other words, they dispute whether the 180–day requirement requires merely the passage of 180 days, or whether it requires the appeal to remain pending before the EEOC for the entire 180 days. The D.C. Circuit has recognized that the rationale behind Title VII's waiting requirements is to give the Commission time to "informally resolve as many charges as possible." *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1338 (D.C.Cir.1999) (construing 42 U.S.C. § 2000e–5(f)(1), which required Title VII complainants to wait 180 days after filing charges with the EEOC before suing private employers in federal court). In *Martini*, the defendant appealed the trial court's rejection of its challenge to the timeliness of plaintiff's Title VII suit. 178 F.3d at 1340. The Circuit dismissed plaintiff's complaint without prejudice because the EEOC had stopped processing her administrative charge (at her request) 21 days after she filed it, and directed that plaintiff "may file a new complaint in district court only after the Commission has attempted to resolve her charge for an additional 159 days." *Id.* at 1348. In *Hill*

*v. Washington Metro. Area Transit Auth.*, 231 F.Supp.2d 286 (D.D.C.2002), the court applied *Martini's* reasoning in a challenge to a claim that had been filed prematurely under 42 U.S.C. § 2000e–16, which is the same provision that is at issue here.[9] Plaintiffs, whose claim was pending when *Martini* was decided, sought and were granted a voluntary dismissal without prejudice to give the EEOC the full 180 days to consider their claim. *Id.* at 293–94. Plaintiffs requested that the EEOC resume processing their claim, then waited for the expiration of the 180–day period before refiling their civil suit. *Id.* The court found that plaintiffs "did all that is required by Title VII as interpreted by *Martini.*" *Id.* at 294;[10] *see also Thompson v. Jasas Corp.*, 212 F.Supp.2d 21, 29 (D.D.C.2002) (relying on *Martini* in dismissing without prejudice plaintiff's claim where the "EEOC stopped processing plaintiff's charge after it had been pending for only 48 days" when plaintiff requested an early right to sue letter).

Here, plaintiff requested withdrawal of his appeal and proceeded to file this lawsuit before the 180–day period had run, and there is nothing in the record to indicate that the EEOC had undertaken and completed its investigation by that time. *Cf. Quarles v. Gen. Investment & Dev. Co.*, 260 F.Supp.2d 1, 16–17 (D.D.C.2003) (a

---

**9.** In addition to requiring an administrative appellant to wait 180 days after filing an appeal before filing a civil suit, 42 U.S.C. § 2000e–16(c) also requires a claimant who has not appealed to wait 180 days after filing the initial charge before filing a civil suit if no decision is received. The *Hill* defendant challenged section 2000e–16(c)'s 180–day limit as it applied to filing an initial charge with the agency.

**10.** The *Hill* defendant argued that the court should dismiss plaintiff's claim for failure to exhaust administrative remedies, asserting that "the plaintiffs not only had to give the

EEOC the opportunity to investigate their charges for an additional 134 days," but under *Martini,* they must also show that the EEOC actually considered their claims during that time. Relying on *Martini,* the court rejected this argument, noting that the D.C. Circuit "did not impose an affirmative burden upon a plaintiff who has filed a civil suit after the expiration of the 180 day period to show that the EEOC actually carried out its legislative mandate." *Hill,* 231 F.Supp.2d at 293. All that was required was that plaintiffs resubmit their claims to the EEOC and allow the 180 days to pass. *Id.* at 294.

suit filed before the prescribed statutory time period did not violate *Martini* where the EEOC had fully investigated plaintiff's claims and determined they lacked merit). Mr. Jones has therefore not done all that is required by Title VII, since he has failed to meet the requisite time constraints.

Even so, plaintiff argues that equitable concerns counsel against dismissing his case. He contends that "[d]ismissing the lawsuit and requiring plaintiff to re-file would serve no purpose other than delay and useless paperwork." (Pl.'s Opp. at 10.) Plaintiff is correct that the time limits provided in Title VII do not constitute a jurisdictional bar to a civil suit because they are " 'subject to waiver, estoppel, and equitable tolling.' " *Martini*, 178 F.3d at 1348 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). In the D.C. Circuit, it is clear that "[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d at 437 (internal citations omitted); *see also Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 333 (D.C.Cir.1992).

[19] Here, defendant has met his burden of pleading and proving that plaintiff failed to exhaust his administrative remedies by filing this suit before his administrative appeal had been pending for 180 days. In response, plaintiff argues that "no purpose would be served by sending the case back to the EEOC" because "[t]here is virtually no chance that allowing the charge to remain with the EEOC an additional 42 days would facilitate a settlement." (Pl.'s Opp. at 11.) This Court will not consider plaintiff's representations about settlement discussions. *See, e.g., Childers v. Slater*, No. Civ. A. 97-853, 1998 WL 429849, at *6 (D.D.C. May 15, 1998) ("as a matter of public policy, as well as a matter of practice . . . the district judges and magistrate judges of this Court . . . insist that all settlement discussions remain confidential"). Moreover, the Court in *Martini* rejected futility arguments, noting that allowing the EEOC to authorize private suits prior to the 180 days would undermine "Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Martini*, 178 F.3d at 1347. Moreover, although plaintiff points out that he filed his administrative appeal *pro se*, he thereafter retained counsel before instituting this action, and his counsel requested that his administrative appeal be withdrawn before giving the agency full opportunity to adjudicate it. (Def.'s Ex. 2 [Letter from Carlton M. Hadden, Director, EEOC Office of Federal Operations, to Stephen G. Seliger, plaintiff's counsel (Aug. 21, 2003) ].) Because plaintiff had the benefit of counsel in filing this suit and affirmatively requested a halt to the administrative appeal process before its resolution, he has failed to establish that equitable avoidance of the administrative timing requirements is appropriate here. His claim will thus be dismissed without prejudice.

## CONCLUSION

For the reasons discussed above, this Court will deny defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to 42 U.S.C. § 2000e–2(g) and for failure to exhaust administrative remedies as to plaintiff's disparate impact claim, but it will grant defendant's motion to dismiss for failure to exhaust administrative remedies due to his premature filing of this

action. A separate Order accompanies this Memorandum Opinion.