**John Clement RYAN, Eugene Glynn, Francis Reale and Joseph Halvey, Appellants,**

v.

**Janet RENO, United States Attorney General, United States Department of Justice and United States Immigration & Naturalization Service, Appellees.**

No. 98–5036.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1998.

Decided Feb. 26, 1999.

William F. Causey argued the cause for the appellants. Harry J. Kelly, III was on brief for the appellants.

Diane M. Sullivan, Assistant United States Attorney, argued the cause for the appellees. Wilma A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on brief for the appellees.

Before: GINSBURG, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

 ■ Appellants John C. Ryan, Eugene Glynn, Francis Reale and Joseph Halvey challenge the district court's dismissal of their employment discrimination suit. In their complaint the appellants, who are of Irish birth and of dual Irish and American citizenship, alleged that the United States Department of Justice (DOJ) and the United States Immigration and Naturalization Service (INS) denied them security clearances and withdrew offers of employment contingent on the clearances on account of national origin and citizenship in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2.[1] The district court dismissed the action, concluding it lacked jurisdiction to review the reason given for withdrawing the offers–that because of the length of time the appellants had lived abroad, DOJ could not conduct adequate background investigations to grant them the required clearances. We review the district court's dismissal for lack of jurisdiction *de novo*, taking as true the facts alleged in the complaint. *Moore v. Valder*, 65 F.3d 189, 196 (D.C.Cir.1995), *cert. denied*, 519 U.S. 820, 117 S.Ct. 75, 136 L.Ed.2d 35 (1996). Applying this standard, we conclude that the district court's dismissal should be affirmed.

---

1. Subsection (a)(1) of section 2000e–2 makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The complaint also alleged violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, but the appellants have not pursued the claim on appeal.

## I.

.The material facts are undisputed. In April 1998 INS announced openings for Immigration Inspectors at Shannon International Airport in Shannon, Ireland and published an advertisement in Irish newspapers soliciting applicants. The Immigration Inspector position is a "sensitive" one requiring background investigations and security clearance of applicants. The appellants, then residents of Ireland, applied for the openings. In letters dated July 7, 1988 Robert A. Cleary, Chief of the Operations Services Branch of the INS Personnel and Training Division, informed each of the applicants that each had been "tentatively selected" for the positions "pending satisfactory completion of security requirements" and requested that each notify INS of his "acceptance or declination" and complete and return enclosed security forms. Joint Appendix (JA) 97–100. Each appellant accepted the offer and returned the forms as requested. To expedite the applicants' hiring, INS sent "waiver packages" to DOJ's Office of Security and Emergency Planning Staff (SEPS). A memorandum in each package requested "a waiver of the preappointment full-field investigation" of each applicant and asserted: "The individual will not have access to classified information until after the requisite full-field background investigation has been completed and an appropriate security clearance granted pursuant to applicable Departmental regulations. Access to sensitive Department of Justice information will be kept to a minimum." *See, e.g.,* JA 185, 186. The waiver requests were "disapproved" on June 27, 1989. In a memorandum to INS of the same date, SEPS Director Jerry Rubino explained the disapproval:

> Since these applicants have lived in Ireland for a period of years and cannot be adequately investigated for the purpose of determining their trustworthiness, and therefore their eligibility to occupy sensitive positions, I have decided to disapprove your waiver request.
>
> ... I recommend that full-field [background investigations] should not be conducted on these individuals. Due to the sensitivity of these positions, I believe that

INS should find candidates that have lived in the United States for the last several years so that an adequate full-field [background investigation] can be conducted.

JA 301. Accordingly, INS personnel chief Cleary informed each applicant in a letter dated August 15, 1989: "The Department of Justice Security Office has determined that, since you have lived in Ireland for an extended period of time, an adequate background investigation cannot be conducted to determine your eligibility to occupy a sensitive position. Therefore, we must withdraw our previous appointment offer." *See, e.g.,* JA 361–63. Later that year DOJ promulgated a policy requiring that an Immigration Inspector applicant "have for three of the five years immediately prior to applying for this position: 1) resided in the United States; 2) worked for the United States overseas in a Federal or military capacity; or 3) be [sic] a dependent of a Federal or military employee serving overseas." JA 358.

In May and June 1990 the four unsuccessful applicants filed discrimination complaints with DOJ. In a decision dated September 29, 1993 an administrative law judge (ALJ) found that "the Agency discriminated against Complainants on the basis of their national origin, Irish American, when their offers of tentative employment for the position of Immigration Inspector at Shannon Airport in Ireland were withdrawn on August 15, 1989." JA 563. In a final agency decision dated December 2, 1993 the DOJ Complaint Adjudication Office rejected the ALJ's finding of discrimination both for lack of evidentiary support and because the decision not to issue a security clearance was unreviewable under *Department of Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988).

On September 9, 1994 the four complainants appealed the DOJ decision to the United States Equal Employment Opportunity Commission (EEOC), which affirmed DOJ on the sole ground that the complainants had failed to prove discrimination. The EEOC rejected DOJ's conclusion that review of the security clearance denial was barred, stating: "The Commission has repeatedly held that it has no authority to review the substance of security clearance determinations or the validity

of the employer's requirement of a security clearance, but that it does have the authority to determine whether the grant, denial, or revocation of a security clearance was conducted in a nondiscriminatory manner." JA 606 (citations omitted). On February 1, 1996 the EEOC denied the complainants' request for reconsideration.

Ryan filed this action in the district court on May 2, 1996 and the three other plaintiffs were joined in December 1996. On September 30, 1997 the government filed a motion to dismiss or for summary judgment on the grounds that (1) only one plaintiff (Ryan) had timely filed suit and (2) the court lacked jurisdiction to review the security clearance decision. In a memorandum opinion and order dated January 28, 1998 the district court dismissed the action for lack of jurisdiction concluding it could not assess the sufficiency of the plaintiffs' claims without reviewing Rubino's decision not to grant security clearances–a review that was foreclosed under *Egan*. The four plaintiffs appealed the dismissal.

## II.

The outcome here is controlled, as DOJ and the district court concluded, by the Supreme Court's decision in *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). The respondent in *Egan* had been hired to work at the Navy's Trident Naval Refit Facility in Bremerton, Washington contingent on "satisfactory completion of security and medical reports." 484 U.S. at 520, 108 S.Ct. 818. When the Director of the Naval Civilian Personnel Command denied him a security clearance, Egan was discharged as ineligible to work at the facility. Egan appealed his discharge to the Merit Systems Protection Board (Board) which concluded it was without authority to review the clearance. Egan then appealed to the Federal Circuit Court of Appeals, which reversed the Board and remanded for review of the clearance decision. The Supreme Court granted *certiorari* and reversed the Federal Circuit, holding that the Board lacked authority "to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Egan*, 484 U.S. at 520, 108 S.Ct. 818. The Court explained:

> For "reasons ... too obvious to call for enlarged discussion," *CIA v. Sims*, 471 U.S. 159, 170, 105 S.Ct. 1881, 1888, 85 L.Ed.2d 173 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

484 U.S. at 529, 108 S.Ct. 818. Three other circuits have held that *Egan* applies in a Title VII action to preclude a "nonexpert body"—whether administrative or judicial—from resolving a discrimination claim based on an adverse employment action resulting from an agency security clearance decision. *See Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997); *Perez v. FBI*, 71 F.3d 513 (5th Cir.1995), *cert. denied*, 517 U.S. 1234, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Brazil v. United States Dep't of Navy*, 66 F.3d 193, 195 (9th Cir.1995), *cert. denied*, 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). We now join those courts.

To determine the merits of the appellants' Title VII claims, it is necessary to apply the burden allocation scheme first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> Under the first step of *McDonnell Douglas* the complainant must establish a *prima facie* case of discrimination. ... If the complainant succeeds in establishing a *prima facie* case, the second step of the *McDonnell Douglas* framework shifts the burden to the defendant employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the defendant does so, then under the

third step of *McDonnell Douglas* the complainant must produce evidence showing that the defendant's proffered reason is but a pretext for discrimination.

*Paquin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 26 (D.C.Cir.1997). In a case such as this, however, a court cannot clear the second step of *McDonnell Douglas* without running smack up against *Egan.* The nondiscriminatory reason proffered below for withdrawing the employment offers was that the applicants' long residence abroad prevented DOJ from conducting an adequate security clearance background investigation. The appellants could not challenge the proffered reason's authenticity without also challenging its validity–as their arguments before the district court made manifest. *See* District Court Opinion at 19 (JA 26) n.12 ("Plaintiffs repeatedly claim that the fact that the State Department may have been able to conduct the investigation abroad acts to undermine Mr. Rubino's decision that no investigation adequately could assess the Plaintiffs' trustworthiness."). As the Ninth Circuit explained:

> The more valid a reason appears upon evaluation, the less likely a court will be to find that reason pretextual; the converse is also true. Even when the court faces independent evidence of a discriminatory motive, it is still necessary to weigh the validity of the defendant's proffered reasons when deciding if they are pretextual. In short, the merit of such decisions simply cannot be wholly divorced from a determination of whether they are legitimate or pretextual.

*Brazil v. United States Dep't of Navy,* 66 F.3d at 197. Because the district court below could not proceed with the appellants' discrimination action without reviewing the merits of DOJ's decision not to grant a clear-

ance, the court was foreclosed from proceeding at all.

The appellants attempt to circumvent *Egan* by characterizing the challenged employment actions as procedural, divorced from any substantive security determination. According to the appellants: "The focus of the district court would be on the procedure used by DOJ to consider the waiver requests and the reason why DOJ denied the waivers, and not on whether the appellants should or should not receive actual security clearances." Br. of Appellants at 36. But DOJ denied the waivers because it concluded no clearances should be granted without more extensive investigations than were possible here. Thus, the waiver denials were tantamount to clearance denials and were based on the same sort of "predictive judgment" that *Egan* tells us "must be made by those with the necessary expertise in protecting classified information," without interference from the courts. *Egan,* 484 U.S. at 529., 108 S.Ct. 818[2]

■ For the preceding reasons we hold that under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII.[3] We emphasize that our holding is limited to Title VII discrimination actions and does not apply to actions alleging deprivation of constitutional rights. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.... We require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.") (citations omitted); *National Federation of Fed. Employees v. Greenberg,* 983 F.2d 286, 289 (D.C.Cir.1993); *United States Information*

---

**2.** In fact, to support their "procedural" argument the appellants expressly assert the feasibility of adequate investigations. *See* Br. of Appellants at 41–43.

**3.** In *Egan* the Supreme Court noted its holding was "fortified" by the fact that the Civil Service Reform Act of 1978 "by its terms does not confer broad authority on the Board to review a security clearance determination." 484 U.S. at 530,

108 S.Ct. 818. Our decision is fortified by Title VII's express language exempting employment actions based on security clearance possession *vel non. See* 42 U.S.C. § 2000e–2(g); *see also Becerra v. Dalton,* 94 F.3d 145, 149 (4th Cir. 1996) ("We agree that there is no unmistakable expression of purpose by Congress in Title VII to subject the decision of the Navy to revoke Becerra's security clearance to judicial scrutiny.").

*Agency v. Krc*, 905 F.2d 389, 400 (D.C.Cir. 1990). The district court's dismissal is

*Affirmed.*