**Patsy BENNETT, Plaintiff,**

v.

**Thomas RIDGE, Secretary of the Department of Homeland Security, et al., Defendants.**

**No. CIV.A.03–2176(RBW).**

United States District Court, District of Columbia.

May 14, 2004.

Robert C. Seldon, Molly E. Buie, Robert C. Seldon & Associates, P.C., Washington, DC, for Plaintiff.

Peter Blumberg, United States Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court on a motion to dismiss filed by defendant Thomas Ridge, Secretary of the Department of Homeland Security ("Defs.' Mot.").[1] The plaintiff, who was employed as a criminal investigator by the Transportation Security Administration ("TSA"), a subcomponent of the Department of Homeland Security ("DHS"), was terminated from that position following a background investigation which revealed that she had not been fully candid in answers she provided on her job application submitted to the TSA by not disclosing that she had resigned from the Department of Defense ("DOD") after being advised by the DOD that it was going to terminate her employment. Amended Complaint and Demand for Jury Trial ("Am.Compl.") ¶¶ 9, 34. In her amended complaint, the plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (2000), against the DHS and the DOD.[2] *Id.* ¶¶ 38–55. Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant Ridge seeks to dismiss the plaintiff's amended complaint on the ground that this "litigation would bring into question issues concerning the grant or denial of a security clearance[,]" which is a discretionary function entrusted to the Exec-utive Branch and thus not subject to judicial review. Def.'s Mot., Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem.") at 6. The plaintiff, on the other hand, asserts that the articulated reason for her termination was a "negative *suitability* determination" due to the misrepresentation of her employment history with DOD and not as a result of a national security investigation. Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Opp'n") at 2. Thus, plaintiff contends that the dispute in this case is properly subject to judicial review. *Id.* at 3–5. Upon consideration of the parties' submissions and for the reasons set forth below, the Court will grant defendant Ridge's motion to dismiss.

## I. Standard of Review: Rule 12(b)(1)

 Federal Rule of Civil Procedure 12(b)(1) requires that the plaintiff bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County*

---

1. Following the filing of defendant Ridge's motion to dismiss, the plaintiff filed an amended complaint. Defendant Ridge subsequently filed a motion to dismiss the amended complaint, which simply incorporated the earlier motion to dismiss. *See* Defendant Thomas Ridge's Motion to Dismiss Amended Complaint. Accordingly, the Court will deny the original motion to dismiss as moot and consider in this Opinion only defendant Ridge's motion to dismiss the amended com-plaint. In addition, the Court notes that the motion to dismiss the amended complaint was only filed by defendant Ridge and therefore the plaintiff's claims against defendant Rumsfeld will not be a subject of this Opinion.

2. The plaintiff has also filed a breach of mediation agreement claim against the DOD. Am. Compl. ¶¶ 56–60.

*Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the " 'plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 13–14 (citation omitted). Finally, the Court notes that in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 14.

## II. *Factual Background*

In August 2000, while employed by the DOD as a national Program Manager, the plaintiff acknowledges that she asked an investigative assistant in her office to conduct a personnel search of internet databases for her to locate the address of an individual. Am. Compl. ¶ 17. While the plaintiff states that she specifically informed the assistant that she should limit her search to "public records," the assistant apparently referred the request to another researcher who then conducted a search limited to government investigative bodies. *Id.* ¶¶ 17–18. Because of the scope of the search, the DOD's Office of Inspector General investigated the plaintiff's search request and on February 6, 2001, proposed to terminate plaintiff's employment because she had allegedly asked the assistant to confine the search to government investigative bodies and then attempted to conceal the scope of her search request. *Id.* ¶¶ 19–21. In response, the plaintiff filed an administrative complaint of discrimination with the DOD. *Id.* ¶ 22. On April 25, 2001, the plaintiff was notified that she would be terminated, effective April 27, 2001, and she resigned the following day. *Id.* ¶¶ 24–25.

On May 21, 2001, the plaintiff and the DOD entered into a mediation agreement whereby the plaintiff agreed to withdraw her administrative complaint and resign in exchange for the agency's promise to expunge its proposal and decision to terminate her employment. *Id.* ¶ 27. The DOD also agreed to refrain from disclosing this information, except under specific circumstances, which the plaintiff contends is not applicable to the circumstances of this case. *Id.* In April 2002, the plaintiff interviewed with the TSA for a criminal investigator position and, according to her, disclosed to the TSA "[i]n her pre-employment interview" the circumstances surrounding her separation from the DOD. *Id.* ¶¶ 29–30. Upon being conditionally hired by the TSA, the plaintiff signed and certified an Office of Personnel Management ("OPM") Optional Form ("OF") 306, Declaration for Federal Employment, in which she answered in the negative Question 11, which asked:

> During the last 5 years: were you fired from any job for any reason; did you quit after being told you would be fired; did you leave any job by mutual agreement because of specific problems; or, were you debarred from Federal employment by the Office of Personnel Management?

Def.'s Mem. at 3; Def.'s Mot., Ex. 5 (Optional Form 306, Declaration for Federal

Employment). The defendant represents that a permanent appointment as a criminal investigator was contingent on the plaintiff meeting certain suitability requirements, including eligibility "for a Top Secret security clearance." Def.'s Mem. at 2; Def.'s Mot., Ex. 2 (Declaration of Barbara Kee). During the course of the investigation to determine whether the plaintiff was suitable for a security clearance, the TSA solicited information from the DOD concerning plaintiff's prior employment. Def.'s Mem. at 2; Def.'s Mot., Ex. 3 (May 30, 2002 letter from the TSA to the DOD "requesting that a check of your indices and records be conducted and you provide this office with any suitability and security information you may have available."). The DOD responded to this request by informing the TSA that the plaintiff had been granted a Top Secret Clearance on September 15, 2000, but there had been a proposal for her removal from federal service. Def.'s Mot., Ex. 4 (DOD letter to the TSA responding to the May 30, 2002 request). On August 14, 2002, the TSA issued a letter to the plaintiff informing her of her discharge for her failure to meet suitability conditions of her appointment. Def.'s Mot., Ex. 1 (Aug. 14, 2002 letter from the TSA to the plaintiff). In this letter, the TSA explained that the plaintiff's appointment was contingent upon the successful completion of a suitability determination. *Id.* The TSA then preceded to discuss the discrepancy between the plaintiff's answer to Question 11 on the OPM OF 306 and the information received from the DOD that she had resigned from the DOD after being advised that her employment would be terminated. *Id.* In this August 14, 2002 Letter, Bar-

bara Kee, who is the Director of the Office of Program Analysis for the TSA, concluded that the plaintiff would be terminated on August 16, 2002, due to her unsuitability for her position. *Id.* On September 17, 2002, the plaintiff initiated the administrative complaint process against the DOD alleging that its disclosure violated the mediation agreement. Am. Compl. ¶ 36. On September 23, 2002, the plaintiff initiated an informal Equal Employment Opportunity ("EEO") complaint process against the TSA, followed by the filing of a formal administrative complaint on January 27, 2003. *Id.* ¶ 37. During the course of the EEO investigation, David Holmes, the Assistant Administrator for Industrial Affairs at the TSA, gave a sworn statement to an EEO investigator which indicated that the plaintiff's "termination was not based on race and reprisal discrimination. It was based solely on the fact she could not sustain a security clearance." Def.'s Mot., Ex. 6 (Sworn Statement of David Holmes). The instant suit was commenced on October 24, 2003.

### III. *Legal Analysis*

The government asserts that this Court lacks subject matter jurisdiction to entertain the plaintiff's Title VII claims because "the litigation would bring into question issues concerning the grant or denial of a security clearance." Def.'s Mem. at 6. Relying on 42 U.S.C. § 2000e–2(g) (2000) [3] and case law, the government states that "[t]he power to issue security clearances lies with the Executive Branch and is delegated to the agencies by the President through Executive Order. [Accordingly, the government contends that t]his power is a discretionary function of

---

**3.** 42 U.S.C. § 2000e–2(g) states that it is not unlawful to terminate an employee if "the occupancy of such position ... is subject to any requirement imposed in the interest of the national security of the United States un-

der any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President ... [and] such individual has not fulfilled or has ceased to fulfill that requirement."

the Executive Branch and is not subject to judicial review." *Id.* (citing Executive Order 10,450 (Apr. 27, 1953); Executive Order 12,968 (Aug. 2, 1995)). In *Ryan v. Reno,* 168 F.3d 520 (D.C.Cir.1999), the District of Columbia Circuit joined other circuits in finding that Supreme Court precedent in *Department of Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), which held that an administrative board could not "review the substance of an underlying decision [by an agency] to deny or revoke a security clearance in the course of reviewing an adverse [employment] action[,]" *id.* at 520, 108 S.Ct. 818, also "applies in a Title VII action to preclude a 'nonexpert body'— whether administrative or judicial— from resolving a discrimination claim based on an adverse employment action resulting from an agency security clearance decision." *Ryan,* 168 F.3d at 523 (citing *Becerra v. Dalton,* 94 F.3d 145, 149 (4th Cir.1996), *cert. denied,* 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997); *Perez v. FBI,* 71 F.3d 513 (5th Cir.1995), *cert. denied,* 517 U.S. 1234, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Brazil v. United States Dep't of Navy,* 66 F.3d 193, 195 (9th Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996)). The Circuit Court explained that

> a court cannot clear the second step of *McDonnell Douglas* without running smack up against *Egan.* The nondiscriminatory reason proffered below for withdrawing the employment offers was that the applicants' long residence abroad prevented DOJ from conducting an adequate security clearance background investigation. The appellants could not challenge the proffered reason's authenticity without also challenging its validity
> . . . .

*Id.* at 524. Thus, the *Ryan* Court concluded that "[b]ecause the district court ... could not proceed with the appellants' discrimination action without reviewing the merits of DOJ's decision not to grant a clearance, the court was foreclosed from proceeding at all." *Id.*

In this case, the plaintiff was conditionally hired based upon the successful completion of a suitability determination by the TSA. Def.'s Mot., Ex. 1, Ex. 2B (Job Description). At the inception of her employment with the TSA, the plaintiff completed a Declaration for Federal Employment, in which, as this Court discussed above, she indicated that within the previous five years she had not resigned from any employment after being told she would be fired. Def.'s Mot., Ex. 5. As a condition of her employment with the TSA, the plaintiff was required to "undergo and successfully complete a background investigation . . . ." Def.'s Mot., Ex. 2B. The government's Questionnaire for National Security Positions explained to her that

> [b]ackground investigations for *national security positions* are conducted to develop information to show whether [an applicant is] reliable, *trustworthy,* of good conduct and character, and loyal to the United States. . . . In addition to the questions on this form, inquiry also is made about a person's adherence to security requirements, *honesty and integrity,* vulnerability to exploitation or coercion, *falsification, misrepresentation,* and any other behavior, activities, or associations that tend to show the person in not reliable, *trustworthy,* or loyal.

Opp'n, Ex. 2 (Questionnaire for National Security Positions) (emphasis added). During the course of TSA's background investigation of the plaintiff, and in response to a specific request for "any suitability and security information[,]" Def.'s Mot., Ex. 3, the DOD notified the TSA about its February 6, 2001 Notice of Proposed Removal and the April 25, 2001 Notice of Decision on Proposed Removal.

Def.'s Mot., Ex. 4. As a direct result of the acquisition of this information about the plaintiff's departure from the DOD, the TSA discovered the plaintiff's misrepresentation on her Declaration for Federal Employment, and decided to terminate her employment because "she could not sustain a security clearance." Def.'s Mot., Ex. 6 (Sworn Statement of David Holmes). The TSA's August 14, 2002 termination letter clearly demonstrates that the plaintiff was found unsuitable for the position of Criminal Investigator because of the discrepancy between her April 22, 2002 answer to Question # 11 on the OPM OF 306 form and the actual circumstances surrounding her resignation from the DOD. Barbara Kee, the Director of the Office of Program Analysis, wrote to the plaintiff stating:

> [the] signature on the OF 306 certified the accuracy of the information contained therein. It also certified that you read and understood that a false or fraudulent answer to any question on any part of this form could result in your being fired after you begin work. Therefore, I have determined that you falsified an official document when you signed and certified your response of 'No' to Question 11 on OPM OF 306 for employment at TSA. You clearly had resigned from DOD after you received a decision of removal from your position and the agency.
>
> Thus, it is my decision to separate you from the TSA based on your unsuitability for your position.

Def.'s Mot., Ex. 1. In addition, the government has supplied the sworn statement from David Holmes, as further explanation for its decision to terminate the plaintiff. Def.'s Mot., Ex. 6. In this statement, Mr. Holmes states that "[t]he complainant's termination was not based on race and reprisal discrimination. It was based sole-ly on the fact she could not sustain a security clearance." *Id.*

The Court concludes that it lacks subject matter jurisdiction to review the TSA's decision to terminate the plaintiff's employment because it in part resulted from the denial of a security clearance. As noted above, the *Ryan* Court explained that judicial review of security clearance denials in the Title VII context would require application of the *McDonnell Douglas* analysis and "a court cannot clear the second step of *McDonnell Douglas* without running smack up against *Egan*." *Ryan*, 168 F.3d at 524. Here, part of the articulated reason given by the TSA for the decision to terminate the plaintiff's employment was because "she could not sustain a security clearance." Def.'s Mot., Ex. 6. And, the plaintiff would be unable to challenge the explanation given by the defendant as its legitimate, non-discriminatory reason for terminating her employment without challenging the validity of TSA's decision that "she could not sustain a security clearance." *Id.* As the Supreme Court explained in *Egan,* for

> reasons ... too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

484 U.S. at 529, 108 S.Ct. 818 (internal citations and quotations omitted). This is

exactly what the Court would have to do in this case if judicial review was undertaken.

The plaintiff relies upon two decisions by members of this Court in *Delgado v. Ashcroft*, Civ. A. No. 99–2311 (May 29, 2003) and *Jones v. Ashcroft*, Civ. A. No. 03–1723 (D.D.C. Mar. 3, 2004), as support for her position that the Court can undertake judicial review of her Title VII claims. Both *Delgado* and *Jones* involved similar factual situations in which the plaintiffs there were either terminated or not hired because of negative suitability determinations. *See Jones*, slip op. at 5–6 (stating that *Delgado* "is factually similar to [*Jones*.]"). The plaintiffs in those cases were found not suitable for employment with the Federal Bureau of Investigation ("FBI") due to, among other reasons, lack of candor in their applications for employment. In both cases, while the government asserted that the Court lacked subject matter jurisdiction to review a FBI decision not to hire an applicant for failure to meet the national security clearance requirements, judicial review was permitted because both Courts concluded that the employment decisions were not based on the plaintiffs' inability to secure security clearances, but rather the result of non-suitability determinations. The decisions were deemed to be separate and distinct from national security concerns. In *Jones*, which is the most recent of the two decisions, the Court noted that in the cases relied upon by the government for the proposition that the Court lacked subject matter jurisdiction to review national security determinations, "unacceptable background investigations factored into employment decisions made in the interest of national security." *Id.* at 8. Thus, the Court concluded, the non-hire "decision was not due to a security clearance denial, which is unquestionably exempt from judicial review." *Id.* (citations omitted). The *Jones* Court distinguished the circum-

stances before it from *Ryan* because the record was devoid of any "indicat[ion] that the FBI's suitability determination was made with any 'predictive judgment' about whether hiring plaintiff would implicate national security concerns." *Id.* at 9 (citing *Ryan*, 168 F.3d at 524) (quoting *Egan*, 484 U.S. at 529, 108 S.Ct. 818) (finding that the agency's decision to deny applicants' request to waive pre-appointment field investigation was tantamount to a clearance denial and therefore was "based on the same sort of 'predictive judgment' that . . . 'must be made by those with the necessary expertise in protecting classified information' without interference from the courts."). The Court opined that instead of the FBI's suitability determination in *Jones* being made with some type of "predictive judgment" about national security concerns, the final decision was based on the plaintiff's "perceived lack of forthrightness." *Id.* at 9–10 (citation omitted). Thus, the *Jones* Court concluded that because there was "no evidence . . . to indicate that the government, at any time prior to the commencement of this lawsuit, considered national security as a basis for its decision not to hire the plaintiff[,]" judicial review was proper. *Id.* at 10.

Had the FBI in *Jones* and *Delgado* articulated at the time of the employment decisions that the plaintiffs' inability to attain a national security clearance factored into the employment decisions, then presumably both judges would have found that the court lacked subject matter jurisdiction to review the determinations. *See Jones*, slip op. at 8 ("Here, the hiring decision was not due to a security clearance denial, which is unquestionably exempt from judicial review."); *Delgado*, slip op. at 14–15 (finding that "[n]one of the plaintiffs [were] discontinued as a result of a failure to obtain security clearance[,]" but rather due to a negative suitability

determination which was found to be "distinct from the process of deciding to grant a security clearance."). However, both Courts concluded, after examining the evidence before it, that the employment decisions were based *solely* on suitability determinations and thus did not credit the position taken by the government in briefs filed with the Courts that the employment determinations were made in the interest of national security and thus exempt from the government's waiver of sovereign immunity under Title VII.

■ In this case, while the TSA's August 14, 2002 termination letter stated that the plaintiff was being terminated due to a non-suitability determination, there is evidence in the record—namely the sworn statement by David Holmes to an EEO investigator—that the plaintiff's termination was due to her inability to "sustain a security clearance." Def.'s Mot., Ex. 6. And while the government's explanation might be reason to question its legitimacy since it was first offered during the course of an EEO investigation and thus in anticipation of litigation, this does not alter the Court's conclusion that judicial review is not proper. This is because even if the government's articulated national security interest explanation is considered a *post hoc* justification, and therefore subject to close scrutiny, an assessment at some point will have to be made concerning whether this reason is a legitimate, nondiscriminatory reason or just a pretext for discrimination. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) (stating that "[a]nother method of establishing pretext is to show that [the defendant's] nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action" and finding that summary judgment was inappropriate because a jury could find that such a reason was pretextual); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) (noting that "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons, was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)" (internal citation omitted)). In this Court's view, the fundamental flaw with the reasoning employed in *Jones* and *Delgado* is the seeming failure to acknowledge that even a *post hoc* explanation, which normally would preclude the grant of summary judgment in the Title VII context, can nevertheless be advanced as the reason for an employer's action. And, when the explanation is based on national security grounds, the evaluation of the explanation is exactly what the Circuit Court in *Ryan* prohibits. 168 F.3d at 524. This is particularly true when, as here, there is no dispute about whether less than candid information was provided by an employee in her employment application and this lack of candor is offered by an agency as the reason why the employee, who was in need of a national security clearance to maintain her employment, could not obtain one. Thus, the Court must conclude that it lacks subject matter jurisdiction to entertain the plaintiff's challenge to her termination.[4]

### IV. *Conclusion*

For the aforementioned reasons, this Court will grant defendant Ridge's motion

---

4. The Court notes that it expresses no opinion as to whether it would be without subject matter jurisdiction to review a Title VII action where there is a viable dispute as to whether the plaintiff had actually provided inaccurate or false information because that situation is not raised here.

to dismiss. This result is called for by the District of Columbia Circuit's decision in *Ryan,* which precludes a court from exercising subject matter jurisdiction in the Title VII context when an agency's explanation about why an employee was subjected to an adverse employment action will inevitably require judicial review of the agency's decision to deny a security clearance. Accordingly, this Court will dismiss all of the plaintiff's claims against defendant Ridge.[5]

---

**5.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.