Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 13, 2005   Decided October 18, 2005

No. 04-5281

PATSY F. BENNETT,
APPELLANT

v.

MICHAEL CHERTOFF,
SECRETARY OF HOMELAND SECURITY AND
DONALD H. RUMSFELD,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02176)

———

*Robert C. Seldon* argued the cause and filed the briefs for appellant. *Molly E. Buie* entered an appearance.

*Deborah Goldstock Ringel* argued the cause for *amici curiae* National Organization of Black Law Enforcement Executives, et al. in support of appellant. With her on the brief were *Kenneth L. Adams* and *Bradley D. Wine*.

*Peter D. Blumberg*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999), the court held that an adverse employment action based on the denial or revocation of a security clearance is not actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. This followed, the court concluded, from *Department of Navy v. Egan*, 484 U.S. 518 (1988), in which the Supreme Court held that the Merit Systems Protection Board lacked authority to review the substance of a decision to deny or revoke a security clearance in the course of reviewing an adverse employment action, because that "sensitive and inherently discretionary judgment call . . . is committed by law to the appropriate agency of the Executive Branch." *Id*. at 527. Appellant Patsy Bennett contends that the termination of her employment was predicated on a determination of her unsuitability for the position rather than a revocation of her security clearance. Hence, she maintains that the district court erred in dismissing her complaint under Title VII, 42 U.S.C. § 2000e-16, for lack of jurisdiction. In her view, the court retains jurisdiction to determine whether her employment was actually terminated because of national security concerns even if the court cannot review the underlying merits of that determination. Bennett thus implicitly rejects the notion that the official reason given by the agency for her termination encompassed national security concerns. Because the implicit premise of her

contention is flawed and because the agency interposed the defense of her inability to sustain a security clearance in response to her allegations of discrimination and retaliation, the trier of fact would be required to consider the merits of that defense. Accordingly, in light of the substantial evidence in the record that the agency's action was premised on Bennett's inability to maintain a security clearance, we hold that *Ryan* is dispositive and affirm the dismissal of the complaint.

## I.

Patsy Bennett was a criminal investigator employed by the Office of the Inspector General of the Department of Defense ("DoD"). In August 2000, Bennett asked an investigative assistant to search public records for the address of an individual in a personal matter. The investigative assistant referred the request to another researcher, who searched records limited to official government investigations. In February 2001, DoD proposed to terminate Bennett's employment on the ground that she had improperly asked the investigative assistant to search records limited to official government investigations for a non-official purpose. Bennett challenged the proposal by filing an administrative complaint of discrimination within DoD. In May 2001, Bennett and DoD entered into a Mediation Agreement in which Bennett agreed to withdraw the complaint and resign from DoD in a "clean paper" resignation, while DoD agreed to expunge its proposal and decision to remove Bennett and to refrain from disclosing them, except upon inquiry about *Giglio*[1]

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972), requires prosecutors to disclose evidence affecting the credibility of a witness when that witness's reliability is likely to determine guilt or innocence. As interpreted by DoD in the instant case, this exception would allow DoD to disclose evidence of Bennett's untrustworthiness to a new employer that might have to rely on her as a witness.

issues by a prospective federal law enforcement employer. Bennett retained her security clearance after her resignation.

Bennett thereafter applied for a job as a criminal investigator with the Transportation Security Administration ("TSA"). During a job interview in April 2002, Bennett disclosed the incident that led DoD to take action against her and cited this incident as the reason she resigned from DoD. However, in her signed and certified Declaration for Federal Employment, she represented that she had not, during the last five years, "quit [a job] after being told that [she] would be fired" or "[left] any job by mutual agreement because of specific problems." After hiring Bennett subject to completion of a suitability determination, TSA solicited information from DoD about her employment there as part of a background check for a security clearance. In response, DoD indicated that Bennett had Top Secret security clearance and provided TSA with a copy of its proposal and decision to remove Bennett. In August 2002, TSA terminated Bennett's employment as a criminal investigator for falsifying her Declaration for Federal Employment, stating in a letter that the termination was "based on [her] unsuitability for [her] position." The letter stated that she did not have appeal or grievance rights, but if she believed her discharge resulted from discrimination or harassment, she could file a report with the Office of Civil Rights. In its official Notification of Personnel Action ("SF-50"), TSA cited a "negative suitability determination" as the reason for termination.

After exhausting her administrative remedies, Bennett filed suit against TSA and DoD under Title VII, 42 U.S.C. § 2000e-16. The complaint alleged that TSA's stated reason for terminating her was a pretext and that the real reasons were discrimination and retaliation against her for filing an administrative complaint against DoD. It also alleged that

DoD's disclosures to TSA were retaliatory and in breach of the Mediation Agreement. TSA filed a motion to dismiss the complaint for lack of jurisdiction on the ground that its termination of Bennett was based on her ineligibility for a security clearance and thus was not subject to judicial review under Title VII. Attached to the motion was the affidavit of David Holmes, a TSA administrator who had interviewed Bennett, stating that Bennett's termination "was based solely on the fact she could not sustain a security clearance." The district court, citing *Ryan*, 168 F.3d at 523-24, granted the motion upon concluding that TSA's decision to terminate Bennett was based in part on denial of a security clearance. *See Bennett v. Ridge*, 321 F. Supp. 2d 49, 54-55 (D.D.C. 2004).

## II.

TSA requires its criminal investigators to obtain a Top Secret security clearance. Because the authority to issue a security clearance is a discretionary function of the Executive Branch and involves the complex area of foreign relations and national security, employment actions based on denial of security clearance are not subject to judicial review, including under Title VII. *See Ryan*, 168 F.3d at 523; *see also Egan*, 484 U.S. at 527-31. Bennett does not dispute this legal principle, but rather contends that the district court erred in dismissing her complaint because the stated ground for her termination was a negative suitability determination, not a denial of a security clearance. Both parties agree that TSA's proffered reason for terminating Bennett was her falsification of her Declaration of Federal Employment. Their principal dispute is over whether this alleged falsification formed the basis of a negative suitability determination or a denial of security clearance.

Bennett emphasizes that determinations of eligibility for security clearance are distinct from determinations of suitability for federal employment. Under Executive Order 12,968, section

2.1(a), 60 Fed. Reg. 40,245, 40,248 (Aug. 7, 1995), "[d]eterminations of eligibility for access to classified information . . . are separate from suitability determinations with respect to the hiring or retention of persons for employment by the government or any other personnel actions." This distinction is also made in the Code of Federal Regulations. *See* 5 C.F.R. § 731.101(a) (2005). As Bennett points out, the two determinations are subject to different processes of review: whereas suitability determinations are subject to appeals to the Merit Systems Protection Board and subsequent judicial review, *see* 5 C.F.R. § 731.501(a), security clearance denials are subject to appeal within the agency, *see* Exec. Order No. 12,968, § 5.2(a), 60 Fed. Reg. at 40,252. Indeed, "[a] suitability determination shall not be used for the purpose of denying an applicant or employee the review proceedings of [section 5.2] where there has been a denial or revocation of eligibility for access to classified information." *Id.* § 5.2(f)(3), 60 Fed. Reg. at 40,253.

Nonetheless, the distinction between determinations of eligibility for security clearances and determinations of suitability offers no support for Bennett's contention that the district court erred in dismissing her complaint. First, while Bennett maintains that her prior security clearance from DoD must be "mutually and reciprocally accepted" by TSA, this requirement, as TSA points out, does not apply if "an agency has substantial information indicating that an employee may not satisfy the standards" for a security clearance, including "trustworthiness, honesty, [and] reliability." *Id.* § 2.4(a), 60 Fed. Reg. at 40,249; *id.* § 3.1(b), 60 Fed. Reg. at 40,250. TSA maintains that, based on the information provided by DoD and Bennett's Declaration of Federal Employment, it concluded that Bennett could not meet its standards for a security clearance. Thus, the fact that Bennett retained her DoD security clearance does not refute the contention that she could not sustain a

security clearance from TSA because of the information that TSA obtained about her dishonesty after she resigned from DoD.

Second, Bennett's contention that suitability and national security considerations are mutually exclusive is refuted by authority she cites. She contends that she was terminated based on a negative suitability determination, maintaining that a "[m]aterial, intentional false statement or deception or fraud in examination or appointment" is a basis for determining that an individual is unsuitable for federal employment, citing 5 C.F.R. § 731.202(b)(3). Such misrepresentation, however, is also a basis for denying security clearance. Executive Order 12,968, section 3.1(b), 60 Fed. Reg. at 40,250, states that "eligibility for access to classified information shall be granted only to employees . . . whose personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment . . . ." Thus, as TSA points out, Bennett was unsuitable for a criminal investigator position for the same reasons she was ineligible for a TSA security clearance. In other words, Bennett's alleged dishonesty could render her both unsuitable for federal employment and ineligible for a security clearance, even if the two determinations are distinct. In any event, lack of "suitability" in ordinary language can encompass lack of suitability because of ineligibility for a security clearance, which is an additional reason for rejecting the strong inference that Bennett would draw from the termination letter and the SF-50. Hence, the fact that the termination letter and the SF-50 stated unsuitability as the reason for Bennett's termination is not inconsistent with termination on the basis that Bennett could not sustain a security clearance.

Third, whether TSA followed the proper procedures to deny or revoke Bennett's security clearance is separate from the

question of the effect of TSA's invocation of a security defense to her Title VII complaint. Bennett contends that the termination letter and the SF-50 are the only formal documents in the record with legal force that can serve as evidence of the basis of her termination, and that TSA did not formally deny or revoke her security clearance pursuant to the procedures in Executive Order 12,968. By contrast, the cases cited by TSA involved formal revocations or denials of security clearance, such that there was no dispute over the basis of the employment action. *See Egan*, 484 U.S. at 521-22; *Ryan*, 168 F.3d at 522; *Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996); *Perez v. FBI*, 71 F.3d 513, 514 (5th Cir. 1995); *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 195 (9th Cir. 1995). On the other hand, the two cases Bennett cites -- *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 3-4 (D.D.C. 2004), and *Delgado v. Ashcroft*, Civ. A. No. 99-2311, 2003 WL 24051558, at *1-3 & n.3 (D.D.C. May 29, 2003), involving the national security exemption in 42 U.S.C. § 2000e-2(g) -- are distinguishable, assuming that they are correct applications of law, because in one there was no record evidence of national security being considered prior to litigation, *see Jones*, 321 F. Supp.2d at 8, and in the other there was evidence specifically suggesting that national security was not an issue, *see Delgado*, 2003 WL 24051558, at *6.

There was sufficient evidence in the record of the basis for TSA's action even though it was not announced to Bennett at the time of the termination of her employment. First, TSA's letter to DoD sought information that was relevant to determining whether Bennett could sustain a security clearance while employed as a criminal investigator in TSA. As a result of DoD's response, TSA learned that Bennett had not been truthful in her employment application. Second, as the district court noted, David Holmes' sworn statement to an EEO investigator was that Bennett's termination was "due to her inability to 'sustain a security clearance.'" *Bennett*, 321 F. Supp. 2d at 57.

The district court recognized, however, that the affidavit is questionable because "it was first offered during the course of an EEO investigation and thus in anticipation of litigation." *Id.* An affidavit sworn years after taking a certain action is evidence of why the action was initially taken. The trier of fact may credit or reject that explanation. If other evidence supports the affidavit, it becomes more credible.

While Bennett claims that TSA's security clearance explanation is pretextual, under *Ryan*, 168 F.3d at 522, a court cannot adjudicate the credibility of that claim. To do so would require the trier of fact to evaluate the validity of the agency's security determination. Bennett could not challenge the authenticity of TSA's proffered reason — her inability to maintain a security clearance — without also challenging the validity of the reason, which is what *Ryan* prohibits. The impossibility of proving pretext under Title VII without testing the merits of the Executive's decision was emphasized by the court in joining three other circuits in *Ryan*, 168 F.3d at 523-24, a case largely ignored in Bennett's briefs on appeal. The countervailing concern, expressed by the *amici curiae*, that judicial acceptance of such explanations will allow agencies to "immunize" themselves from Title VII actions simply by "raising the 'national security' flag" at the time of litigation, Amicus Br. at 4, ignores that "suitability" can encompass national security and that where there is substantial evidence that the latter was a contemporaneous reason for the agency's action, the interests have been resolved by this court's precedent in favor of executive discretion.

Contrary to the suggestions of Bennett and *amici curiae*, the Supreme Court's decision in *Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004), does not unsettle that precedent. The Court in *Hamdi* held that the government's invocation of national security authority – an assertion that Hamdi was an "enemy

combatant" – could not preclude judicial review of the lawfulness of his detention. *Id*. at 2650-51. *Hamdi* is inapposite for two reasons. First, the Court emphasized that physical liberty is a fundamental right that must be accorded great weight. *See id.* at 2646-47. It is far from clear that the Court would strike the same balance in the context of employment termination. Second, Executive Order 12,968 provides procedural protections to individuals determined ineligible for security clearance. *See* Exec. Order No. 12,968, § 5.2(a), 60 Fed. Reg. at 40,252. While Bennett now challenges TSA's failure to follow those procedures, although access to administrative review is not the relief sought in her complaint, counsel for TSA appropriately acknowledged during oral argument that equitable tolling may apply to the statute of limitations for administratively challenging the denial of her security clearance because TSA's termination letter identified Bennett's only possible appeal as a report to the Office of Civil Rights and did not state that she could appeal the decision internally under 49 C.F.R. § 8.25. *Cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Accordingly, in light of *Ryan*, we affirm the dismissal of the complaint.