KAVANAUGH, Circuit Judge,
dissenting:
Although slightly tweaking its analysis in response to the Government’s petition for rehearing, the majority opinion still suffers from a basic flaw. The majority opinion continues to insist that some agency security clearance decisions are judicially reviewable. In my respectful view, the majority opinion’s conclusion cannot be squared with the Supreme Court’s decision in Department of the Navy v. Egan, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988).
In Egan, the Supreme Court held that the Navy’s decision to deny Egan a security clearance could not be reviewed in the course of his personnel action against the Navy. Justice Blackmun’s opinion for the Court reasoned that “the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.” Id. at 529, 108 S.Ct. 818. The Egan Court thus precluded agency employees such as Egan from pursuing personnel actions against their agency employers when doing so would entail second-guessing the agency’s security clearance decision. The Court recognized that Congress could override the presumption of unreviewability that attached to security clearance decisions, but it said that Congress had not done so with respect to personnel suits like Egan’s. See id. at 530, 108 S.Ct. 818.
The majority opinion here, however, reads Egan far more narrowly. Under the majority opinion, security clearance decisions are committed not “to the broad discretion of the agency responsible,” id. *774 at 529, 108 S.Ct. 818, but only to some “appropriately trained” employees within the agency. Maj. Op. at 767 (quoting Rattigan v. Holder, 643 F.3d 975, 983 (D.C.Cir.2011)). Under the majority opinion’s new-fangled scheme, courts may not review the decisions of agency employees who initiate investigations or grant, deny, or revoke clearances, but courts may review the decisions of agency employees who report security risks. The majority opinion’s slicing and dicing of the security clearance process into reviewable and unreviewable portions is nowhere to be found in Egan, and it does not reflect the essential role that the reporting of security risks plays in the maintenance of national security.
* * *
To begin with, contrary to the majority opinion’s approach, the Supreme Court in Egan consistently referred to “the agency” — not to certain employees within an agency — as the decisionmaker that may not be second-guessed in security clearance cases. Consider the following from Egan:
• “[T]he grant of security clearance to a particular employee ... is committed by law to the appropriate agency of the Executive Branch.” Egan, 484 U.S. at 527, 108 S.Ct. 818.
• “[Cjertain civilian agencies ... were entrusted with ... protecting ... information bearing on national security.” Id. at 527-28,108 S.Ct. 818.
• “Presidents ... have sought to protect sensitive information ... by delegating this responsibility to the heads of agencies.” Id. at 528, 108 S.Ct. 818.
• “Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.” Id. at 529, 108 S.Ct. 818.
• “[A]n agency head ... should have the final say in deciding whether to repose his trust in an employee who has access to [classified] information.” Id. (citation omitted).
• “[T]he Senate and House Committees ... gave no indication that an agency’s security-clearance determination was now to be subject to review.” Id. at 531 n. 6,108 S.Ct. 818.
• “Placing the burden on the Government” would involve “second-guessing the agency’s national security determinations.” Id. at 531, 108 S.Ct. 818.
In the face of the recurring “agency” theme in Egan, the majority opinion here concludes that Egan protects only the actions of certain agency employees. The majority opinion relies on a single sentence in Egan that mentions “those with the necessary expertise in protecting classified information.” Id. at 529, 108 S.Ct. 818. But in that sentence, the Egan Court was simply contrasting the expertise of agencies with that of outside reviewing bodies, not implying that courts should draw a reviewability line based on which employees of an agency possessed certain amounts of expertise. The full quote from Egan makes that clear:
Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information. For reasons too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.
*775 Id. (citation, ellipsis, and internal quotation marks omitted) (emphases added).
Nothing in Egan’s language suggests that the Supreme Court was only barring review of the security clearance actions of “appropriately trained” employees, as the majority opinion here contends. Maj. Op. at 767 (quoting Rattigan, 643 F.3d at 983). Nor have this Court’s decisions applying Egan drawn the line that the majority opinion creates. Following the Supreme Court’s lead, we have referred to the decisionmaking process of the agency as a whole, not to certain parts or employees of an agency, in employment discrimination cases involving security clearance decisions. See, e.g., Bennett v. Chertoff, 425 F.3d 999, 1003 (D.C.Cir.2005) (“trier of fact” may not “evaluate the validity of the agency’s security determination”); Ryan v. Reno, 168 F.3d 520, 523 (D.C.Cir.1999) (“Egan applies in a Title VII action to preclude ... a discrimination claim ... resulting from an agency security clearance decision”). The separation of powers issue identified by the Supreme Court in Egan and reflected in our subsequent decisions stems from the kind of decision being made by the agency official — a predictive judgment about security risks — not from the job title or expertise of the agency official making the decision.
Moreover, the Supreme Court in Egan protected the security clearance process as a whole. The Court did not suggest that courts could review distinct parts of that process. The majority opinion here, however, says that only the initiation of security clearance investigations and the grant, denial, or revocation of clearances are within the Egan rule. In the majority opinion’s view, the reporting of security risks is not within the Egan rule. I do not find that distinction in Egan. Nor do I think it makes much sense. Investigations and revocations of security clearances will often be prompted by reports of misconduct. Reports of misconduct are an essential part of the overall process of maintaining national security and preventing those who may be security risks from accessing sensitive government information. Egan protects the front end of the security clearance process — including reports of possible security risks — as much as it protects the back end.
One powerful indication that the reporting of security risks is important to national security and falls within the Egan rule is that the President himself has required such reporting. In an executive order issued by President Clinton and still in effect, all federal employees with security clearances must make a predictive judgment about what constitutes suspicious behavior and report any such behavior for investigation: “Employees are encouraged and expected to report any information that raises doubts as to whether another employee’s continued eligibility for access to classified information is clearly consistent with the national security.” Exec. Order No. 12,968, § 6.2(b), 60 Fed.Reg. 40,245, 40,253 (Aug. 2, 1995). Egan recognized that the “authority to protect such [national security] information falls on the President as head of the Executive Branch and as Commander in Chief.” Egan, 484 U.S. at 527, 108 S.Ct. 818. The Egan rule thus covers reports made under President Clinton’s executive order. See id. at 527-30, 108 S.Ct. 818. The majority opinion, however, would allow courts to second-guess the decisions of agency employees who report security risks pursuant to President Clinton’s executive order. I cannot square that with Egan.
I appreciate and share the majority opinion’s concern about deterring false reports that in fact stem from a discriminatory motive. But there are a host of sanctions that deter an agency employee from engaging in such behavior. See, e.g., 71 Fed.Reg. 64,562, 64,563 (Nov. 2, 2006) (De *776 partment of Justice “retains the right, where appropriate, to discipline an employee for conduct that is inconsistent with Federal Antidiscrimination and Whistle-blower Protection Laws up to and including removal”). And in any event, it is not for us to revise the rule set forth in Egan; that’s a decision for the Supreme Court or Congress.
The rule that the Supreme Court announced in Egan applies “unless Congress specifically has provided otherwise.” 484 U.S. at 530, 108 S.Ct. 818. If Congress wishes to re-strike the balance between personnel and employment discrimination laws on the one hand and national security on the other, it is free to do so — either broadening or narrowing the scope of the protection for agencies’ security clearance decisions. Until Congress does so, however, we must apply Egan according to its terms. Here, Rattigan claims that FBI officials improperly decided to report him to security clearance investigators. Under Egan, we cannot second-guess the FBI’s decision. For that reason, Rattigan’s suit faces an insurmountable bar, and I would dismiss it.
I respectfully dissent. When we vacated the prior panel decision, we indicated that the parties would have an opportunity to file new petitions for rehearing en banc after our new opinion was issued. If the Government files a petition for rehearing en banc in response to today’s revamped but still-flawed majority opinion, I will urge the full Court to grant it.